UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

PETER ELLIS,

                                    Plaintiff,

            v.

PB VENTILATING SYSTEMS, INC.,

                                    Defendant.

------------------------------------------------------------------x

**REPORT AND RECOMMENDATION**

23-CV-4629
(Merle, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Plaintiff Peter Ellis brings this civil rights action against his former employer, Defendant PB Ventilating Systems, Inc., pursuant to 42 U.S.C. § 1981 alleging that he was discriminated and retaliated against on the basis of race and age in violation of federal law, the New York State Human Rights Law ("NYSHRL") as codified by New York State Execute Law § 296 *et seq*, and the New York City Human Rights Law ("NYCHRL") as codified by New York City Administrative Code §8-107(1) *et seq*. *See generally* Dkt. No. 1.

Currently pending before this court, on referral from the Honorable Natasha C. Merle, United States District Judge, is Defendant's Motion for Sanctions and Spoliation of Evidence ("Defendant's Motion") pursuant to Rule 37(e) of the Federal Rules of Civil Procedure. Dkt Nos. 29, 30; Referral Order dated March 1, 2024. Defendant also seeks attorney's fees pursuant to 28 U.S.C. § 1927.

For the reasons set forth below, this Court respectfully recommends that Defendant's Motion be DENIED without prejudice.

# I.    Background

## A.    Factual Background

The following recitation of facts is adapted largely from Plaintiff's Complaint.  Dkt. No. 1.

Plaintiff, "an African America[n] male, over the age of forty, and a resident of the State of New York," was employed by Defendant PB Ventilating, Inc. for a period commencing in or about 1994 until November 10, 2021.  Dkt. No. 1, at ¶¶ 6, 11, 45.  Plaintiff began working for Defendant as a full-time Apprentice.  *See id.* ¶ 11.

Defendant, during the relevant employment period, was (and remains) a domestic corporation headquartered at 24-80 47th Street, Astoria, New York, 11103.  *Id.* at ¶ 8.  Plaintiff, throughout the course of his employment with Defendant, received periodic promotions and accompanying salary raises.  *Id.* at ¶¶ 11-12, 14, 15-17.  Defendant promoted Plaintiff to Foreman in 2016.  *Id.* at ¶ 16.  By 2018, based on Plaintiff's purportedly outstanding performance, "Defendant began giving Plaintiff $150.00 per week in addition to Plaintiff's salary."  *Id.* at ¶ 17.  Plaintiff contends that he "was an exemplary employee who had no write-ups or disciplinary actions throughout his employment."  *Id.* at ¶ 14.

Over the course of his employment with Defendant, Plaintiff was supervised by the company's purported owner, Mr. Paul Berti, Jr. ("Mr. Berti") and, after approximately November 2020, Mr. Phillip Guiffre ("Mr. Guiffre").  *Id.* at ¶¶ 13-19.

According to the Complaint, upon Mr. Guiffre becoming Plaintiff's supervisor, Plaintiff alleges that Mr. Guiffre "immediately began targeting and discriminating against Plaintiff based on Plaintiff's race (African American) and age (over forty)."  *Id.* at ¶ 19.  In one example, Plaintiff asserts that Mr. Guiffre "appeared at two of Plaintiff's work sites," greeted every employee, but

"purposely did not introduce himself to Plaintiff." *Id.* at ¶ 20. Indeed, Plaintiff alleges that Mr. Guiffre declined to speak to Plaintiff on that day. *Id.* In other instances, Mr. Guiffre would dismiss other employees for the day "but would force Plaintiff to stay an extra half-hour before [eventual dismissal]." *Id.* at ¶ 22. Further, Mr. Guiffre "frequently took multiple tools from Plaintiff's [toolbox]" resulting in Plaintiff being "forced to complete his work, on time, while missing crucial tools." *Id.* at ¶ 23. Plaintiff also asserts that Mr. Guiffre "habitually diminished Plaintiff's authority" by declining to grant Plaintiff autonomy over his own work—which purportedly contrasted with the treatment and alleged deference afforded to "younger, Caucasian, and Hispanic foremen[.]" *Id.* at ¶ 24.

While Plaintiff "attempted to ignore" Mr. Guiffre's purportedly discriminatory treatment, the continued targeting resulted in Plaintiff's assertion of multiple complaints to Mr. Berti. *Id.* at ¶ 26. Specifically, Plaintiff alleges that he complained to Mr. Berti—the purported owner of the business—about harassment, discrimination, and the hostile work environment created by Mr. Guiffre's alleged acts. *Id.* Plaintiff also contacted a union representative to report the alleged incidents. *Id.* at 27. According to Plaintiff, however, the union representative "never fully and properly investigated the complaints, never questioned the other employees, and never notified Plaintiff of the results of his investigation." *Id.* at ¶ 28. Consequently, Plaintiff was then forced to continue working with Mr. Guiffre despite Mr. Guiffre's purportedly harassing behavior. *Id.*

In or about April 2021, Plaintiff again complained to Mr. Berti regarding Mr. Guiffre's allegedly discriminatory treatment, to wit, Mr. Giuffre was "discriminating against Plaintiff by purposely assigning the other mechanics easy work and assigning Plaintiff difficult work." *Id.* at ¶ 29. Plaintiff notes that Mr. Berti "again dismissed [his] concerns of discrimination"—simply

stating that "[he will] speak to [Mr. Guiffre]." But no such conversation occurred, and the purportedly discriminatory acts persisted. *Id.* at ¶ 31.

In or about June 2021, Plaintiff purportedly advised Mr. Guiffre that the Juneteenth holiday was imminent and explained that the holiday was "recognized as the day Black people were freed from slavery." *Id.* at ¶ 39. Mr. Guiffre allegedly scoffed at Plaintiff and stated, "I have a comment about that, but I'll keep it to myself." *Id.* On or about June 18, 2021 (or the day before the Juneteenth holiday), Plaintiff alleges that Mr. Guiffre "entered the workspace" and "threatened all staff" by stating that "[n]o one can leave early, or I'll lay everyone off and close the company." *Id.* at ¶ 40. Plaintiff believes that this "threat" was directly related to his earlier notice about the Juneteenth holiday. *Id.* On the same day, Plaintiff alleges to have lodged a complaint with Mr. Berti—who again "dismissed Plaintiff's complaint" and replied "[d]on't worry, I'll talk to him." *Id.* at ¶ 41.

In or about October 2021, Plaintiff had a "disagreement" with an unidentified co-worker; the co-worker purportedly "ultimately threatened Plaintiff with a hammer." *Id.* at ¶ 32. Defendant terminated Plaintiff's employment the following day without "any investigation or questioning." *Id.* at ¶¶ 32-33.

After contacting Mr. Berti to complain about Mr. Guiffre's discrimination and his termination, Defendant re-hired Plaintiff approximately two weeks later. *Id.* at ¶¶ 34-35. When Plaintiff returned to work, however, Plaintiff alleges that he "learned that he would have to complete his assignments without a partner." *Id.* at ¶¶ 35-36. Indeed, Plaintiff alleges that all other similarly-situated employees had work partners assigned—which allowed for assignment to be completed efficiently in light of the "complicated nature of the work." *Id.* at ¶ 38.

On or about November 10, 2021, Defendant fully terminated Plaintiff's employment; Defendant "provided him with a letter stating that he was being terminated due to lack of work." *Id.* ¶ 45.   Plaintiff contends that Defendant's reasoning is belied by (i) the "surplus of work which needed to be completed" and (ii) Defendant's hiring of two "significantly younger" mechanics and one apprentice "just three days" following Plaintiff's termination.   *Id.* at ¶¶ 45-48.   Feeling "humiliated, degraded, victimized, embarrassed, traumatized, and emotionally distressed" (*id.* at ¶ 51), Plaintiff turned to this Court for relief.   Plaintiff filed a Complaint on June 21, 2023.   *See* Dkt. No. 1.

**B.    Defendant's Motion**

**1.    The Company Phone**

For "a few years," as part of his employment by Defendant, Plaintiff was issued an iPhone 6S, with the phone number 917-295-4499.   Dkt. No. 30, at 5[1]; Dkt. No. 31-6, at 96 (Transcript of Plaintiff's Deposition); Dkt. No. 36, at 8.   This iPhone—a "company phone"—was used by Plaintiff to communicate with other employees of Defendant.   Dkt. No. 30, at 7; Dkt. No. 31-6, at 102-103; Dkt. No. 36, at 7.   According to Defendant, Plaintiff was the "sole employee of Defendant with a company phone."   Dkt. No. 30, at 17.   Defendant alleges that "Plaintiff retained custody and control of this iPhone even after being laid off for lack of work on November 10, 2021."   Dkt. No. 30, at 5.

**2.    The Discovery Requests**

Discovery commenced on August 17, 2023.   *See* Dkt. No. 14.   On August 30, 2023, Defendant served its discovery requests on Plaintiff, including Document Request No. 8, which asked Plaintiff to produce "[a]ny and all documents, including but not limited to text messages,

---

[1] Citations to specific page numbers in briefs, letters, or discovery requests are to the ECF-stamped page numbers.

picture messages, communications via social media providers (e.g., Facebook, Instagram, Twitter, Tik Tok, etc.), email communications, slack messages, voicemail messages, etc., which reflect or in any way related to any conversations between or among Plaintiff and any current or former employee of Defendant (including but not limited to [Mr. Guiffre], [Mr. Berti], or Pavlina Berti.)"[2] regarding the allegations set forth in the Complaint. Dkt. Nos. 30, at 3, 31-3, at 8. On the same date, Defendant's Document Request No. 53 asked that Plaintiff "[p]roduce the iPhone 6S, phone number 917-295-4499, that was provided to Plaintiff by Defendant in or about 2018." Dkt. No. 31-3, at 16.

In his October 11, 2023 response to Document Request No. 8, Defendant contends that Plaintiff submitted photographs, not screenshots, of an iPhone screen presenting a curated version of conversations with both Mr. Berti and Mr. Giuffre." Dkt. No. 30, at 13; *cf.* Dkt. No. 36, at 8 ("In preparation for this legal action, Plaintiff took screen shots of text messages on that telephone that pertained to the claims and defenses in this action and then provided same to [Plaintiff's counsel]."). Also in his October 11, 2023 response to Document Request No. 53, Plaintiff stated that "Plaintiff will produce the iPhone 6S, phone number 917-295-4499, that was provided to Plaintiff by Defendant in or about 2018, under separate cover." Dkt. No. 31-4, at 28.

### 3.    The Deletion of Text Messages

On November 2, 2023, "Plaintiff sent the iPhone to Defendant's counsel." Dkt. No. 26; *see also* Dkt. No. 36, at 8-9.

Upon examination of the iPhone, Defendant "determined that all text messages had been deleted from the iPhone, including the pictures of text messages that Plaintiff had provided through discovery." Dkt. No. 26. Defendant noted that "[t]he iPhone settings for 'Message History – Keep

---

[2] Pavlina Berti is also an employee of Defendant. Dkt. No. 36, at 7.

Messages' was set at '30 Days.'" *Id.* Defendant's "[a]ttempts to retrieve or locate text messages from this iPhone were unsuccessful." *Id.*

Defendant deposed Plaintiff on January 17, 2024. *See* Dkt. No. 31-6, at 1. Defendant argues that Plaintiff's testimony revealed that "Plaintiff engaged in spoliation by deleting text messages on his iPhone[,] thereby depriving Defendant of the opportunity to receive and review the missing pertinent evidence which could be crucial to the claims and defenses in this matter." Dkt. No. 30, at 13; *see also* Dkt, No. 31-6.

Plaintiff concedes that "[w]hen Defendant requested the return of the telephone, Plaintiff first wanted to remove personal information, such as videos and photographs, that had accumulated over the years." Dkt. No. 36, at 8. According to Plaintiff, he was not "tech-savvy," so he "asked his daughter to assist him." *Id.* Plaintiff claims that when Plaintiff's "daughter attempted to delete non-work related information, the text messages were inadvertently deleted as well." *Id.* Plaintiff claims that he "attempted to retrieve the information but did not have Defendant's Apple identification number to do so." *Id.*

On January 18, 2024—three days before the close of all discovery[3]—Defendant filed a pre-motion conference letter advising the Honorable Hector Gonzalez, the United States District Judge then-assigned to this matter, of its intent to move for discovery sanctions pursuant to Fed. R. Civ. P. 37(e) due to Plaintiff's purported failure to preserve electronically stored information ("ESI"). *See* Dkt. No. 26. Defendant argued that "Plaintiff engaged in spoliation and has denied Defendant the opportunity to receive and review evidence relevant to the claims and defenses in this matter." Dkt. No. 26, at 2.

---

[3] Following three extensions of the discovery deadline, discovery in this case closed on January 22, 2024. *See* Text Order dated December 4, 2023; Dkt. No. 25 (requesting an extension of discovery); Text Order dated January 18, 2024 (denying a further extension of discovery).

In response to the parties' joint submission, the Court ordered the parties to brief the current motion for spoliation of certain ESI.  In the parties' briefing, the Court ordered the parties to address, *inter alia*, the following:

> 1. To what degree can Defendant obtain the text messages between Plaintiff and Messrs. Berti and Giuffre that were deleted by Plaintiff? []
> 2. What is the scope of data loss with respect to any "additional text messages with other [of Defendant's] employees about Plaintiff's job and the allegations in this matter"? []
> 3. How did Plaintiff's production of text messages "reflect[] a manicured version of conversations" between Plaintiff and Messrs. Berti and Giuffre? []
> 4. Plaintiff states that his daughter "inadvertently deleted" text messages from his work phone. []  Does Plaintiff's daughter need to be deposed on the limited issue of spoliation?

Dkt. No. 27 (citations omitted).  Granting Defendant leave to move for sanctions, Judge Gonzalez ordered Defendant to file its motion on or before February 7, 2024.  Dkt. No. 27.

Following reassignment to Judge Merle and a subsequent request for an extension, Defendant was ordered to file its motion for sanctions by February 21, 2024.  Dkt. No. 28; Text Order dated February 7, 2024.

## 4.    Defendant's Argument

Defendant's Motion was filed on February 21, 2024, along with an accompanying memorandum of law and supporting affidavits.  Dkt. Nos. 29-31; *see also* Dkt. No. 39 (Defendant's Reply).

In its brief, Defendant argues that the Court should dismiss "Plaintiff's case for persistent discovery abuses under Fed. R. Civ. P. 37 and the Court's inherent authority."  Dkt. No. 30, at 7 (capitalization removed).  Defendant contends that all relevant facts indicate that Plaintiff willfully deleted all electronically-stored communications—including text messages—from the subject iPhone. Defendant asserts that, in response to its discovery requests, Plaintiff improperly produced "screenshots" of an iPhone screen presenting a carefully selected snippet of a conversation

8

between himself, Mr. Berti, and Mr. Giuffre.  Dkt. No. 30, at 13.  Defendant argues that all text messages were willfully deleted from the subject iPhone before the iPhone was returned to the company for inspection.  *Id.*

Additionally, Defendant submits that the deleted evidence was "highly relevant to the proceedings."  *Id.*  at 15.  Specifically, Defendant asserts that Plaintiff's own testimony affirms that "the iPhone contained additional text messages between Plaintiff and Messrs. Berti and Giuffre . . . regarding Plaintiff's job and the allegations in this case."  *Id.*

Further, in addition to Defendant's inability to retrieve the deleted text messages from the subject iPhone, Defendant notes that this evidence cannot be retrieved from any other source— especially as "Plaintiff was the sole employee with a company phone" and the other employees are not parties to this action and "would have had no duty to preserve their text messages."  *Id.* at 17.  Defendant thus asserts that Plaintiff's conduct warrants a case-ending sanction pursuant to Fed. R. Civ. P. 37 and such sanctions should include an award of attorneys' fees.  *Id.* at 19.

### 5.    Plaintiff's Argument

On March 18, 2024, Plaintiff filed a memorandum of law and supporting affidavits opposing Defendant' Motion.  Dkt. Nos. 36-37.  Plaintiff argues that Defendant cannot demonstrate that Plaintiff acted with the intent to deprive Defendant of discovery and Defendant cannot demonstrate that it was harmed by Plaintiff's conduct.  *See* Dkt. No. 36, at 8-9.  Plaintiff argues that, when Defendant requested that the subject iPhone be returned, Plaintiff "first wanted to remove personal information, such as videos and photographs, that had accumulated over the years."  *Id.* at 8.  Not being "tech-savvy," Plaintiff asked his daughter to "assist him" in deleting the videos and photographs deemed irrelevant.  *Id.*  In the course of rendering assistance, Plaintiff asserts that the "text messages were inadvertently deleted as well."  *Id.*  Plaintiff notes that he

attempted to retrieve the information to no avail as he did not possess Defendant's "Apple identification number." *Id.*

Plaintiff asserts that there is "no documentary evidence, deposition testimony, or circumstantial evidence" suggesting that Plaintiff intentionally deleted the subject text messages with the intent to deprive Defendant. *Id.* at 10. As to Defendant's assertion regarding the insufficiency of "screenshots" as responsive to its discovery request, Plaintiff argues that he provided "text messages that were relevant and pertained to the claims and defenses" at issue in this litigation. *Id.*

Additionally, Plaintiff alleges that Defendant has failed to establish that the missing text messages cannot be retrieved from other sources. *Id.* at 15. Plaintiff argues that he "sent text messages to Mr. Berti and Pavlina Berti," and "[a]s such, they are in possession of any and all text messages that Plaintiff inadvertently deleted from the company iPhone." *Id.* at 16. Moreover, "to the extent that Plaintiff sent text messages to other employees of Defendant from the company iPhone, Defendant can easily retrieve the lost text messages by asking those employees to send the applicable text messages to it, whether or not Defendant provided those employees with a company cellular telephone." *Id.*

## II.    Legal Standards

Federal Rule of Civil Procedure 37(e) "governs the determination of whether [ESI] has been discarded or destroyed at least negligently (often referred to as "spoliation"[4]) and the consequences of such behavior." *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2024 WL 475140, at *7 (S.D.N.Y. Feb. 7, 2024) (citations omitted). Rule 37(e) provides:

---

[4] "The Second Circuit defines spoliation as 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Marshall v. Port Auth. of New York & New Jersey*, No. 19-CV-2168 (LJL), 2022 WL 17491006, at *6 (S.D.N.Y. Dec. 5, 2022) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).

> Failure to Preserve [ESI].  If [ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> > (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> > (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> > > (A) presume that the lost information was unfavorable to the party;
> > > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> > > (C) dismiss the action or enter a default judgment."

Fed. R. Civ. P. 37(e).

As set forth in Rule 37(e), "[b]efore determining whether the threshold elements of spoliation under Rule 37(e) have been met, the Court must first identify what evidence was *actually* lost." *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, No. 13-CV-2581 (PKC) (JLC), 2021 WL 4190628, at *11 (S.D.N.Y. Aug. 18, 2021) (emphasis in original) (citing *Leidig v. Buzzfeed, Inc.*, No. 16-CV-542 (VM) (GWG), 2017 WL 6512353, at *7 (S.D.N.Y. Dec. 19, 2017) ("[S]poliation sanctions can be imposed only when the party seeking such sanctions demonstrates that relevant evidence has been 'lost.'"); *see also Prelvukaj v. Naselli*, No. 19-CV-5939 (RPK) (PK), 2023 WL 3570659, at *7 (E.D.N.Y. May 18, 2023) ("The 'threshold requirements' of Rule 37(e) are thus that the party in possession of the ESI (1) had a duty to preserve the ESI, (2) failed to take reasonable steps to preserve the ESI, and (3) the ESI cannot be restored or replaced." (citing *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 502 (S.D.N.Y. 2016)).

## III.  Discussion

Here, the ESI at issue should have been preserved in the anticipation or conduct of litigation.  But, as discussed below, Defendant has not met its threshold burden of establishing,

pursuant to Rule 37(e), that the ESI is "lost," since it remains to be determined whether the ESI "cannot be restored or replaced through additional discovery."

### A.    Duty to Preserve

"Federal Rule of Civil Procedure 37(e) contemplates sanctions if ESI 'that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery.'" *EBIN New York, Inc. v. SIC Enter., Inc.*, No. 19-CV-1017 (PKC) (TAM), 2022 WL 4451001, at *6 (E.D.N.Y. Sept. 23, 2022) (quoting Fed. R. Civ. P. 37(e)).  The first element that a party must establish when seeking sanctions for the destruction of evidence is "that the party having control over the evidence had an obligation to preserve it at the time it was destroyed."  *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (internal citations and quotation marks omitted).

"When determining whether a duty to preserve ESI exists and when that duty arose, the Court 'should consider the extent to which a party was on notice that litigation was likely and that the information would be relevant.'"  *EBIN New York, Inc.*, 2022 WL 4451001, at *6 (quoting Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment).  A party must retain all relevant evidence in existence when the duty to preserve attaches and any relevant evidence created thereafter. *Hice v. Lemon*, No. 19-CV-4666 (JMA) (SIL), 2021 WL 6053812 *5 (E.D.N.Y. Nov. 17, 2021), *report and recommendation adopted*, 2021 WL 6052440 (E.D.N.Y. Dec. 21, 2021) (citing *Caltenco v. G.H. Food, Inc.*, No. 16-CV-1705, 2018 WL 1788147 *4 (E.D.N.Y. Mar. 7, 2018)).

To meet its preservation obligations, each party "must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of

relevant documents." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 431 (S.D.N.Y. 2004) (citation omitted). Once the litigation hold is in place, counsel "must oversee compliance with the litigation hold, monitoring the party's efforts to retain and produce the relevant documents." *Id*. at 432.

"The duty to preserve ESI arises 'most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation.'" *EBIN New York, Inc.*, 2022 WL 4451001, at *6 (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)); *see also Creative Res. Grp. of New Jersey, Inc. v. Creative Res. Grp., Inc.*, 212 F.R.D. 94, 106 (E.D.N.Y. 2002) (finding that the duty to preserve arose months prior to the start of the lawsuit when events that led to the filing of the lawsuit first surfaced); *Leidig v. Buzzfeed, Inc.*, No. 16-CV-542 (VM) (GWG), 2017 WL 6512353, at *8 (S.D.N.Y. Dec. 19, 2017) (finding that plaintiffs' duty to preserve evidence arose when an article that plaintiffs found to be defamatory was published because plaintiffs' law firm sent the publisher of the article a letter implicitly threatening legal action). "When litigation is 'reasonably foreseeable' is a flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." *EBIN New York, Inc.*, 2022 WL 4451001, at *6 (citing *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011)).

Here, as Defendant notes, "it has been unequivocally established and virtually uncontested that Plaintiff had a duty to preserve his text messages, which were maintained on an iPhone that was entirely in his care, control and possession, at the time that he reasonably anticipated litigation." Dkt. No. 39, at 7. Indeed, there can be no viable argument that Plaintiff did not know—

in the midst of discovery in a lawsuit that he initiated—that he had a duty to preserve ESI on a phone provided to him by the company that he was suing. Thus, the Court finds that Plaintiff had a duty to preserve the ESI.

## B. Whether the ESI Cannot be Restored or Replaced Through Additional Discovery

"When the duty to preserve ESI attaches, the party must take reasonable steps to preserve it." *Prelvukaj*, 2023 WL 3570659, at *8. Here, there, again, can be no dispute that Plaintiff did not take reasonable steps to preserve the ESI, since he concedes that he had his daughter delete ESI from the company phone. *See, e.g., Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 61 (S.D.N.Y., 2020) ("Where a party fails to timely institute 'a formal litigation hold and . . . otherwise informally preserve ESI,' the Court can conclude that it did not undertake reasonable steps to preserve ESI.") (citations omitted).

Thus, the key question is whether the ESI in the phone cannot be restored or replaced under Rule 37(e); in essence, whether the evidence was "*actually* lost." *CBF Industria de Gusa S/A*, 2021 WL 4190628, at *11 (emphasis in original). "The movant has the burden to establish that ESI cannot be restored or replaced." *Prelvukaj*, 2023 WL 3570659, at *8. "If the lost ESI can be replaced, there is no harm and no sanction may be imposed." *Id.*

Here, Defendant has not demonstrated whether the ESI at issue is irretrievable. *See EBIN New York, Inc.*, 2022 WL 4451001, at *7 (declining to proceed with a fulsome analysis of spoliation factors where a threshold element was dispositive). "Ordinarily, if emails were sent to or from other parties, those emails are not 'permanently lost or unrecoverable' because they can be replaced in discovery by obtaining them from those other parties." *Doubleline Cap. LP v. Odebrecht Fin., Ltd.*, No. 17-CV-4576 (GHW) (BCM), 2021 WL 1191527, at *6 (S.D.N.Y. Mar. 30, 2021) (quoting *Karsch v. Blink Health Ltd.*, No. 17-CV-3880 (VM) (BCM), 2019 WL

2708125, at *17 n.21 (S.D.N.Y. June 20, 2019).  Indeed, "[b]ecause [ESI] often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere." Fed. R. Civ. P. Rule 37(e) advisory committee's note to 2015 amendment.

Based on the record before the Court, it cannot be said that the ESI has been "actually lost" and is thus irretrievable.  It is undisputed that Plaintiff sent text messages to at least two employees, including one individual, Mr. Berti, who is the purported owner of Defendant.  Dkt. No. 30, at 17. It thus logically follows that the text messages also exist within the custody of the recipients. *CAT3, LLC*, 164 F. Supp. 3d at 497 ("[R]elief would not be available under [Fed. R. Civ. P. 37(e)] where, for example, emails are lost when one custodian deletes them from his mailbox but remain available in the records of another custodian."); *Morgan Art Found. Ltd. v. McKenzie*, No. 18-CV-4438 (AT) (BCM), 2020 WL 5836438, at *19 (S.D.N.Y. Sept. 30, 2020) (deleted emails were not "permanently lost or unrecoverable" because they could be obtained from the parties and non-parties to which (or from which) they were sent); *cf. Karsch* 2019 WL 2708125, at *17 n.21 (some emails housed on a spoliated server were not "permanently lost or unrecoverable," because they were "sent to or from defendants" or "sent to or from any of the non-destroyed, non-corrupted accounts maintained by Karsch and his affiliates," but other emails from that server were "permanently lost or unrecoverable"); *Living Color Enterprises, Inc. v. New Era Aquaculture, Ltd.*, No. 14-CV-62216, 2016 WL 1105297, at *5 (S.D. Fla. Mar. 22, 2016) (finding, under Fed. R. Civ. P. 37(e), that text messages were not "lost" when it could be provided to the movant by another party).

Defendant's arguments in this regard are unavailing.  First, Defendant argues that "to the extent Plaintiff's Counsel contends that Defendant can get the text messages from other

employees, Plaintiff has not provided the names of the other employees from whom Defendant could 'easily retrieve' the lost text messages." Dkt. No. 39, at 12.

Defendant, however, is intimately familiar with the limited number of people at issue in this litigation—most of whom are its own employees. Indeed, Defendant's own discovery requests clearly indicate that at least three individuals—"[Mr. Guiffre], [Mr. Berti], or Pavlina Berti." (Dkt. No. 31-3)—have likely been the recipient of text messages from Plaintiff and the subject iPhone. Defendant has made no effort to obtain the production of text messages and other ESI from Mr. Guiffre, Mr. Berti, or Pavlina Berti through the issuance of third-party subpoenas. *See Gill v. JUS Broad. Corp.*, No. 19-CV-4216 (DLI) (PK), 2023 WL 7412275, at *6 (E.D.N.Y. Nov. 9, 2023) ("Plaintiff does not describe any efforts to replace those [missing] emails, such as by subpoenaing the third parties who sent or received the correspondence."). "A party need not 'pursue every possible avenue for replacing or restoring the ESI, but it must show that it made some good-faith attempt to explore its alternatives before pursuing spoliation sanctions.'" *Id.* (quoting *Steves and Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 109 (E.D. Va. 2018)).

Defendant argues that "[e]ven if Plaintiff and his counsel identified these employees, they are not parties to this lawsuit and would have had no duty to preserve their text messages." Dkt. No. 39, at 12. While the Court agrees that the non-parties may not have had a duty to preserve their text messages (notwithstanding that, presumably, Defendant should have placed a litigation hold over its employees, including owner Paul Berti, whose namesake adorned the company prior to 2012) (Dkt. No. 31-7, at 7)), Defendant retained the burden to *ensure* that the non-parties were no longer in possession of the relevant text-messages through adequate use of various non-party discovery mechanisms. Therefore, the text messages may still be available and within the custody of the non-party custodians.

Defendant also argues that "the additional costs associated with Defendant's ability to hypothetically acquire and collect these text messages" supports a finding of prejudice.  *Id.*  But this argument also fails, as Defendant could have been entitled to an award of costs and attorneys' fees from Plaintiff as a reimbursement for the incurrence of unnecessary expenses stemming from negligence or spoliation.  Indeed, Rule 37(e)(1) "authorizes an award of attorneys' fees and costs to the moving party to the extent reasonably necessary to address any prejudice caused by the spoliation."  *CBF Industria de Gusa S/A*, 2021 WL 4190628, at *20 (citing *Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15-CV-9363 (ALC) (DF), 2018 WL 1512055, at *9 (S.D.N.Y. Mar. 12, 2018) ("Monetary sanctions are appropriate in this case to compensate Plaintiffs for the time and resources spent because of Defendants' unjustifiable failure to preserve documents or even issue a litigation hold.")).  "This remedy ameliorates the economic prejudice imposed on [Plaintiffs], and also serves as a deterrent to future spoliation."  *Lokai Holdings*, 2018 WL 1512055, at *17 (internal quotations omitted) (quoting *CAT3*, 164 F. Supp. 3d at 502).   At this stage, any finding of any prejudice is premature without further discovery.

At bottom, Defendant is unable to show that the text messages (and other ESI) are irretrievably lost.  Since the deletion of the text messages will be considered "harmless" if the same text messages "can be found elsewhere" (*CAT3, LLC*, 164 F. Supp. 3d 488, 497), Defendant is not entitled to spoliation sanctions at this time.  Accordingly, this Court respectfully recommends that Defendant's Motion be denied without prejudice.

## IV.    <u>Discovery</u>

It remains unclear why the parties have not sought, as an alternative to a Motion for Sanctions, an order reopening discovery for the limited purpose of serving and executing third-party subpoenas.

While this Court generally disfavors *sua sponte* extensions of discovery deadlines, it is inclined to find that both parties may benefit from the production of the relevant text messages or ESI ahead of summary judgment briefing. Therefore, should Judge Merle adopt this Report and Recommendation, this Court will extend discovery for sixty days for the limited purposes of permitting the parties to engage in third-party discovery, including subpoenas upon the recipients of Plaintiff's text messages, to obtain the ESI at issue herein. To the extent Defendant deems it necessary, Defendant may seek to depose Plaintiff's daughter on the limited issue of spoliation.

The Court notes that if, at the end of a sixty-day discovery period, Defendant is still unable to retrieve the ESI at issue from these third-party sources, Defendant would still be able to renew a motion for sanctions and spoliation—assuming that it can establish that the ESI cannot be restored or replaced. The undersigned would also respectfully recommend that the deadline to file a motion for summary judgment be stayed until after the close of the discovery period and any future motion for sanctions has been decided.

## V.    <u>Conclusion</u>

For the foregoing reasons, the undersigned respectfully recommends that Defendant's Motion be **DENIED** without prejudice.

A copy of this Report and Recommendation is being electronically served on counsel for the parties.

Any objections to this Report and Recommendation must be filed within 14 days after service of this amended Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Merle. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the

district court's order.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP*

*v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010);

*Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. 2023); *see*

*also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: Brooklyn, New York
      June 17, 2024

**SO ORDERED**.

                              *s/ Joseph A. Marutollo*
                          JOSEPH A. MARUTOLLO
                          United States Magistrate Judge