UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETER ELLIS,<br><br>*Plaintiff*,<br><br>– against –<br><br>PB VENTILATING SYSTEMS, INC.,<br><br>*Defendant*. | **MEMORANDUM & ORDER**<br>23-cv-04629 (NCM) (SDE) |

**NATASHA C. MERLE**, United States District Judge:

Plaintiff Peter Ellis brings this action against his former employer, defendant P.B. Ventilating Systems, Inc., for race discrimination and retaliation under 42 U.S.C. § 1981; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101, *et seq*. He also brings claims of age discrimination under the NYSHRL and NYCHRL. *See* Compl. ¶¶ 53–114, ECF No. 1. Defendant has moved for summary judgment on all counts. *See generally* Mot.[1] For the reasons stated below, the motion for summary judgment is **GRANTED** with respect to plaintiff's Section 1981 claims. The Court declines to exercise supplemental jurisdiction over plaintiff's state law claims; accordingly, those claims are **DISMISSED** without prejudice.

[1] The Court hereinafter refers to defendant's Memorandum of Law in Support of its Motion for Summary Judgment, ECF No. 72, as the "Motion"; plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, ECF No. 73, as the "Opposition"; and defendant's Reply Memorandum of Law in Further Support of Defendant's Motion for Summary Judgment, ECF No. 74, as the "Reply."

## BACKGROUND

### I. Factual Background

This suit arises out of plaintiff's employment as a sheet metal worker at PB Ventilating Systems ("PB Ventilating" or "defendant"). Compl. ¶¶ 11–52.[2] Plaintiff is an African American man. Rule 56.1 Resp.¶ 15, ECF No. 73-1. He was also a member of the Local 28 Union ("Union"). Rule 56.1 Resp.¶ 14. At the time period at issue in this lawsuit, plaintiff had worked for PB Ventilating or its predecessor for between 25 and 30 years. Ellis Deposition ("Ellis Dep.") 15–16, ECF No. 72-6; Rule 56.1 Counterstatement ¶ 54, ECF No. 73-1. During at least one point in that period, PB Ventilating had terminated him for lack of work, but he was rehired when work picked back up. Rule 56.1 Resp. ¶ 32; Ellis Dep. 131–32.

While employed by PB Ventilating, plaintiff was never made aware of any performance issues with his job, Rule 56.1 Counterstatement ¶ 9, other than issues with his punctuality, Rule 56.1 Resp. ¶¶ 38, 40. PB Ventilating's owner, Paul Berti, addressed those tardiness issues with plaintiff; however, plaintiff was never disciplined for them. Rule 56.1 Resp. ¶¶ 38, 40, 41. Otherwise, plaintiff performed his job competently and, on at least one project, received multiple compliments from his supervisor for his work. Rule 56.1 Resp. ¶ 31; Giuffre Deposition ("Guiffre Dep.") 40, ECF No. 72-4.

Beginning in 2020, plaintiff was supervised by field supervisor Phil Giuffre. Rule 56.1 Resp. ¶ 18. As field supervisor, Giuffre was responsible for making sure employees arrived punctually and did not leave early. Rule 56.1 Resp. ¶ 19. He also visited job sites,

---

[2] Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

helped foremen solve problems, and occasionally interfaced with clients. Rule 56.1 Resp. ¶ 19.

From the first time plaintiff saw Giuffre on his job site, he felt that Giuffre treated him differently from others. *See* Rule 56.1 Counterstatement ¶ 19. Specifically, Giuffre did not identify himself or acknowledge plaintiff when he came to the job site. Rule 56.1 Counterstatement ¶ 19. In contrast, Giuffre spoke to everyone else there. Rule 56.1 Counterstatement ¶ 21. The workers on site that day included plaintiff's Black partner, Dwayne Beckford. Ellis Dep. 53. Following Giuffre's snubbing, plaintiff complained to Berti, explaining that Giuffre had walked onto the job site and spoken to everybody except him. Rule 56.1 Counterstatement ¶ 21.

Plaintiff quickly encountered other issues with Giuffre. For example, although Giuffre let less senior, Caucasian, and Hispanic foremen run their own jobs and supervise their own work, he permitted plaintiff to run only one job during his time as field supervisor. Rule 56.1 Resp. ¶ 82. As a result, plaintiff began managing his own jobs less after Giuffre became his supervisor, despite his long tenure at the company. Rule 56.1 Counterstatement ¶ 36. Plaintiff complained about this issue to Berti, explaining that Giuffre did not allow him to run his own jobs. Rule 56.1 Resp. ¶ 82.

Further frustrating plaintiff, Giuffre would also take tools from his toolbox. Rule 56.1 Counterstatement ¶ 34. Giuffre would give the tools to other employees at the job site to perform their work. Rule 56.1 Resp. ¶¶ 77–78, 80. Though plaintiff also received tools from other employees' toolboxes, at least occasionally certain tools that were taken from his toolbox were never returned. Rule 56.1 Resp. ¶¶ 79, 81.

Additionally, plaintiff was upset with Giuffre's decisions about hours. Plaintiff, Beckford, and other Black workers were regularly required to work for an extra half an

hour after other employees were permitted to leave for the day. Ellis Dep. 57–60. Giuffre also required all PB Ventilating employees to work on Juneteenth 2021, even though plaintiff explained to him that that Juneteenth was the holiday that recognized when Black people were freed from slavery. Rule 56.1 Counterstatement ¶ 44. Giuffre responded that he had "a comment about that" but would keep it to himself. Ellis Dep. 111–13. In 2021, Juneteenth was not a holiday recognized in the collective bargaining agreement that governed the PB Ventilating unionmembers' days off. Rule 56.1 Resp. ¶ 88. Accordingly, on June 18, 2021, PB Ventilating employees were told that they could not leave early on Juneteenth. Rule 56.1 Counterstatement ¶ 45. They were also told that if anyone did leave early, they would be laid off or the company would close. Rule 56.1 Counterstatement ¶ 45. Plaintiff brought his complaints about this incident to Berti as well. Rule 56.1 Counterstatement ¶ 46.

Collectively, these incidents made plaintiff believe that Giuffre's issues with him were based on race. Ellis Dep. 53–56. Specifically, he believed that Giuffre did not want to put him in a position of authority because of his race. Ellis Dep. 56. However, he did not recall whether he used the term "discrimination" specifically when describing his complaints about Giuffre to Berti. Ellis Dep. 74–75. He did, however, recall using the term "harassment." Ellis Dep. 75.

A few months after the Juneteenth incident, in October 2021, plaintiff was involved in a dispute with another employee, Rob Chavis, on a job site. Rule 56.1 Resp. ¶ 45. Plaintiff and Chavis exchanged words, and the incident nearly turned violent when Chavis reached for a hammer. Rule 56.1 Resp. ¶ 49. At that point, others intervened and restrained Chavis. Rule 56.1 Resp. ¶ 49.

Both plaintiff and Chavis were laid off due to this incident. Rule 56.1 Resp. ¶ 50. Berti and Giuffre explained that the layoffs were because the job site's general contractor had insisted that the two could no longer work on their site. Rule 56.1 Resp. ¶ 50. However, Berti rehired plaintiff two weeks later, after the general contractor's job supervisor—the person who had banned the plaintiff and Chavis from the job site—quit. Berti Deposition ("Berti Dep.") 70, ECF No. 72-3.

However, when plaintiff returned, Giuffre did not permit him to continue partnering with Beckford, who had since been assigned a different partner in his absence. Rule 56.1 Resp. ¶ 55–56; Berti Dep. 73. Plaintiff brought this complaint to Berti as well. Berti Dep. 73.

Plaintiff's return to PB Ventilating was ultimately shortlived: in November 2021, he and nine other sheet metal workers were terminated. Pavlina Berti Declaration ("Pavlina Decl.") ¶ 5, ECF No. 72-9. Of those nine other employees, four were white, three were Black, and two were Hispanic. Pavlina Decl. ¶ 6. The reason given by the company for the terminations was a "lack of work." Pavlina Decl. ¶ 4. However, plaintiff points out that there was still work to be done at two projects, and PB Ventilating had recently hired two younger sheet metal workers. Rule 56.1 Counterstatement ¶¶ 53–55. Unlike in prior instances in which plaintiff had been let go from the company, this time, he was not rehired. Rule 56.1 Counterstatement ¶ 59.

## II. Procedural History

On June 21, 2023, plaintiff sued PB Ventilating. Compl. He brought claims for race discrimination and retaliation under Section 1981, the NYSHRL, and the NYCHRL, as well as claims of age discrimination under the NYSHRL and NYCHRL. *See* Compl. ¶¶ 53–114. Multiple settlement attempts were unsuccessful, and the case proceeded to discovery.

*See* Minute Entry dated December 18, 2023; Status Report, ECF No. 56. Discovery closed on January 10, 2025. *See* ECF Order dated January 10, 2025. On November 3, 2026, defendant served the instant motion for summary judgment on plaintiff. Letter, ECF No. 62; *see also* Mot. (filed on the docket on February 3, 2026, pursuant to the Court's bundling rule). Plaintiff opposes the motion. *See* Opp'n.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021).[3] Facts are in genuine dispute when "the jury could reasonably find for" the non-moving party based on the evidence in the record. *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021). "In deciding whether to award summary judgment, the court must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 354 (2d Cir 2021).

The movant "bears the initial burden of showing that there is no genuine dispute as to a material fact." *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018). Where the moving party meets their burden, the non-moving party must provide sufficient evidence establishing a genuine issue of material fact beyond "[t]he mere existence of a scintilla of evidence." *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012). "A district court may not make credibility determinations, or weigh evidence" on summary

[3] Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

judgment. *Reynolds v. Quiros*, 990 F.3d 286, 294 (2d Cir. 2021). Thus, a district court denies summary judgment where there are disputed facts "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 45 (2d Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

**DISCUSSION**

## I. Race Discrimination under Section 1981

"Section 1981 provides, in relevant part, that 'all persons within the jurisdiction of the United States shall have the same right to make and enforce contracts and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.'" *Ottley-Cousin v. MMC Holdings, Inc.*, No. 16-cv-00577, 2019 WL 1994488, at *6 (E.D.N.Y. May 6, 2019) (quoting 42 U.S.C. § 1981(a)). In the Second Circuit, that language "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015) (quoting *Patterson v. Cty. of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004)). "The same core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are applicable to claims of discriminatory conduct in violation of [S]ection 1981." *Ottley-Cousin*, 2019 WL 1994488, at *6. "Section 1981 discrimination claims are therefore analyzed under the three-stage, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Id.*

"Under that framework, 'a plaintiff must first establish a prima facie case of discrimination by showing that: (1) []he is a member of a protected class; (2) []he is qualified for [his] position; (3) []he suffered an adverse employment action; and (4) the

circumstances give rise to an inference of discrimination.'" *Id.* (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015)). Under Section 1981, an "adverse employment action" is "a materially adverse change in the terms and conditions of employment." *Shultz v. Congregation Shearith Israel of City of New York*, 867 F.3d 298, 304 (2d Cir. 2017). A plaintiff must show "that the action caused '*some* injury respecting their employment terms or conditions"—they must be "worse off," even if not "significantly so." *Dolce v. Connetquot Cent. Sch. Dist.*, No. 25-1197, 2026 WL 2560338, at *7 (2d Cir. Aug. 31, 2026) (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024)). "Being fired or demoted, losing benefits or responsibilities, or even being assigned 'a disproportionately heavy workload' are all adverse employment actions" under that standard. *Id.* (quoting *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004)). However, "[t]o be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.*

Defendant's motion focuses on the fourth prong required for plaintiff to establish a prima facie case of discrimination. Specifically, defendant argues that plaintiff has failed to state a prima facie case because he does not present evidence demonstrating that any adverse employment action taken against him was caused by racial discrimination. Mot. 14–17. Relying on the "same actor inference," defendant argues that because Berti rehired plaintiff in October 2021, shortly before he was ultimately terminated in November 2021, plaintiff's claim of discriminatory intent fails. Mot. 12; Reply 6–7, 11.

Here, the only event plaintiff identifies as an adverse employment action in the context of his Section 1981 discrimination claim is his termination by Berti in November

2021. Opp'n 15.[4] Given that defendant has presented evidence supporting the same actor inference, and that plaintiff has not presented evidence to raise a triable dispute as to that inference, the Court finds that plaintiff has failed to support a prima facie claim of discrimination under Section 1981.

The Second Circuit has repeatedly observed that "where the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to [him] an invidious motivation that would be inconsistent with the decision to hire." *Schnabel v. Abramson*, 232 F.3d 83, 91 (2d Cir. 2000) (quoting *Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 560 (2d Cir. 1997)). "The rationale behind this inference is that it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job." *Brollosy v. Margolin, Winer & Evens, LLP*, No. 04-cv-00873, 2006 WL 721433, at *8 (E.D.N.Y. Mar. 20, 2006).

---

4 Though plaintiff asserts that he suffered "multiple adverse employment actions," he names only one with respect to his federal discrimination claim: his November 2021 termination. Opp'n 15. However, he identifies other "adverse events and treatment" that he claims demonstrate that he was treated "less well" than other similarly situated coworkers of different races, invoking the standard associated with the NYCHRL. *See* Opp'n 15–16. Specifically, he states that he was "denied the opportunity to lead projects and run jobs despite his foreman status and extensive experience;" he was "required to work late while others left early"; he "had tools removed from his toolbox;" and he was "was systematically ignored" by Guiffre. *See* Opp'n 15–16. Additionally, he identifies "not being assigned a partner" and "not being allowed to run a site as a foreman" as "adverse actions" in the context of his retaliation claim. Opp'n 22.

Given that presentation in plaintiff's briefing, it is not clear that he views these events as "adverse employment actions" with respect to his Section 1981 discrimination claim as well. Nevertheless, even assuming that those actions "caused [plaintiff] '*some* injury respecting [his] employment terms or conditions," such that they also meet the federal discrimination standard at issue here, *Dolce*, 2026 WL 2560338, at *7, the Court holds that, for the reasons described below, plaintiff has failed to present evidence that raises an inference of discrimination with respect to those actions as well. *See infra* 10–12 & n.5.

The inference of discrimination is even weaker "when the firing has occurred only a short time after the hiring." *Id.* Courts in this Circuit have regularly held that hiring and firing that take place within two years of each other give rise to this "same actor inference." *See Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 137–38 (2d Cir. 2000) (citing cases where difference of "under two years" between hiring and firing provides strong inference against discrimination).

In this case, Berti rehired and then terminated plaintiff within a span of just two *months*. *See* Rule 56.1 Resp. ¶¶ 45, 51–52, 57. Accordingly, at the outset, the Court finds that there is an inference against discrimination here.

"This 'same actor' finding does not, however, end the question." *Jackson v. Post Univ., Inc.*, 836 F. Supp. 2d 65, 92 (D. Conn. 2011). The inference is permissive, not mandatory, and it does not have to preclude an inference of discrimination where plaintiff puts forward other evidence supporting a prima facie case. *Ehrbar v. Forest Hills Hosp.*, 131 F. Supp. 3d 5, 25 (E.D.N.Y. 2015). "In other words, the Court must [still] review all of the facts presented to determine whether there exists evidence of racial discrimination." *Jackson*, 836 F. Supp. 2d at 92.

Here, however, plaintiff has not identified such evidence. *First*, plaintiff has not identified similarly situated coworkers of other races who were treated differently from him. "Ordinarily, a plaintiff can satisfy his prima facie burden 'by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group.'" *Toussaint v. NY Dialysis Servs., Inc.*, 230 F. Supp. 3d 198, 212 (S.D.N.Y. 2017), *aff'd,* 706 F. App'x 44 (2d Cir. 2017) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). In such cases, "[a]lthough the similarly situated comparators need not be identically situated to the

plaintiff, 'those employees must have a situation sufficiently similar to the plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination.'" *Id.* (quoting *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001)). "In other words, . . . [plaintiff] bear[s] the burden of showing that [he and his comparators] were 'similarly situated in all material respects.'" *Fahmy v. Duane Reade, Inc.*, No. 04-cv-01798, 2006 WL 1582084, at *8 (S.D.N.Y. June 9, 2006) (quoting *Mandell v. Cnty. of Suffolk,* 316 F.3d 368, 379 (2d Cir. 2003)).

Here, plaintiff argues that he was "denied leadership opportunities" compared to coworkers of other races. Opp'n 16. Specifically, he points to his testimony that Giuffre let younger, Caucasian, and Hispanic foremen run their own jobs and supervise their own work, while Giuffre permitted him to run only one job as his supervisor. Rule 56.1 Resp. ¶ 82. He also testified that non-Black employees were permitted to leave on time, while he was required to work for an extra half an hour. *See* Ellis Dep. 58–60. However, it is undisputed that plaintiff had a record of issues with tardiness. Rule 56.1 Resp. ¶ 39. Additionally, it is undisputed he was at one point fired for cause (following his disagreement with Chavis in October 2021). Rule 56.1 Resp. ¶ 51. "Courts in the Second Circuit have routinely recognized that a materially dissimilar disciplinary history may disqualify a peer employee from being deemed similarly situated to a plaintiff." *Toussaint*, 230 F. Supp. 3d at 215 (collecting cases); *see also*, *Wood v. New York City Transit Auth.*, No. 11-cv-03560, 2015 WL 1469398, at *10 (E.D.N.Y. Mar. 30, 2015) (plaintiff, who had previously been suspended for thirty days, was not similarly situated to proposed comparators who had not been suspended and who had been suspended for only one day). Nevertheless, plaintiff has not pointed to any evidence that the coworkers who were permitted to run jobs or leave earlier had similar disciplinary histories (or even, in the

case of the late releases, the same role or seniority). Accordingly, he has failed to meet his burden to identify *similarly situated* comparators of other races who were treated more favorably than him.[5]

*Finally*, the one explicitly race-related comment—Giuffre's statement that he "had a comment about [Juneteenth] but would keep it to himself," Rule 56.1 Counterstatement ¶ 44—also does not give rise to an inference of discrimination, because plaintiff was rehired by defendant after Giuffre made those statements. In the context of retaliation claims, courts in this circuit have held that when a positive employment action occurs

---

[5] As noted above, *supra* 9 n.4, plaintiff also takes issue with the fact that Giuffre took tools from his toolbox, Opp'n 16; however, it is undisputed that plaintiff also received tools from other employees' toolboxes, Rule 56.1 Resp. ¶ 81, and he does not identify a similarly situated comparator of a different race whose tools were not taken or were taken less frequently. Accordingly, he has not shown disparate treatment based on race related to the tools.

He also has not shown disparate treatment on the basis that Giuffre "systematically ignored [him] compared to white or Hispanic employees." Opp'n 16. While the transcript provisions he cites support that Giuffre was terse with him or failed to acknowledge him, contrary to the statements in his briefing, those provisions do not identify any specific similarly situated comparators of a different race who were treated differently. And indeed, Ellis's own evidence indicates that his partner, who was also Black, was not similarly ignored. He points to an example in which "Giuffre walked onto a job site and spoke to *everybody* except [him]," Rule 56.1 Resp. ¶ 72 (citing Berti Dep. 55) (emphasis added), on a day that his partner was also present, Ellis Dep. 53. Though plaintiff testified that he "did not recall" whether Giuffre spoke to his partner that day, a party may not "[d]eny[] a fact solely based on a lack of knowledge as opposed to contrary evidence," as doing so "is insufficient to raise any genuine dispute of material fact," *see Foote v. Bd. of Educ. of Whitehall Cent. Sch. Dist.*, No. 22-cv-00815, 2024 WL 3376651, at *2 (N.D.N.Y. July 11, 2024). Berti's testimony confirmed that plaintiff had indicated to him that Guiffre spoke to "everybody" else that day, Berti Dep. 55, and Guiffre testified that he had a practice of greeting each mechanic working under him when he visited a job site, Guiffre Dep. 54–55. Thus, the uncontested evidence—and the evidence on which plaintiff himself has relied in his opposition to summary judgment, Rule 56.1 Resp. ¶ 72—indicates that plaintiff's partner was not likewise snubbed. Courts within this circuit have held that plaintiffs' discrimination claims are undermined where the record contains evidence that comparators of the same race as plaintiff were treated better. *See Toussaint*, 230 F. Supp. 3d at 213 (collecting cases). Thus, the evidence that plaintiff was ignored, while his partner was not, cannot support plaintiff's claims of discrimination here.

after a protected activity and before an adverse employment action, that "intervening positive employment action breaks any alleged causal link" between the protected activity and the adverse action. *See Williams v. New York City Dep't of Educ.*, No. 19-cv-01353, 2021 WL 1178118, at *10 (S.D.N.Y. Mar. 29, 2021) (causal link broken where plaintiff was promoted after protected activity); *Byrne v. Telesector Res. Grp., Inc.*, No. 04-cv-0076S, 2007 WL 962929, at *12 (W.D.N.Y. Mar. 29, 2007) (same, collecting cases). As with the "same actor inference," the underlying logic of this "intervening positive action inference" is that a decisionmaker motivated by discriminatory or retaliatory animus likely would not promote or otherwise elevate an employee who is a target of that animus.

The same logic applies here. Giuffre made his comment "[i]n June 2021," Rule 56.1 Counterstatement ¶ 44, and plaintiff was later rehired in October 2021, Rule 56.1 Resp. ¶¶ 45, 52. Even assuming, for the sake of argument, that Giuffre's comment indicates racial hostility, it would not make sense to conclude that that hostility resulted in plaintiff's termination in November 2021 when it did not prevent his hiring in October 2021. Thus, under the "intervening positive action inference," plaintiff's rehiring breaks any causal link between plaintiff's ultimate termination in November 2021, and any inference of racial hostility raised by Giuffre's comment.

Accordingly, plaintiff has failed to put forward sufficient evidence of a prima facie claim of discrimination under Section 1981, and the Court grants summary judgment with respect to plaintiff's Section 1981 discrimination claim.

## II. Hostile Work Environment under Section 1981

"In order to establish a hostile work environment claim under 42 U.S.C. § 1981, a plaintiff 'must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his] employment were

thereby altered.'" *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 723–24 (2d Cir. 2010) (quoting *Alfano v. Costello*, 294 F.3d 365, 373–74 (2d Cir. 2002)).

"A hostile working environment is shown when the incidents of harassment occur either in concert or with a regularity that can reasonably be termed pervasive." *Id.* at 724 (quoting *Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1189 (2d Cir. 1987)). Additionally, to sustain a Section 1981 hostile environment claim, "[t]he plaintiff must show more than a few isolated incidents of racial enmity." *Id.* (quoting *Williams v. Cnty. of Westchester,* 171 F.3d 98, 100–01 (2d Cir. 1999)). When determining whether a work environment is hostile, "a court must look to the surrounding circumstances including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Clarke v. Metro. Museum of Art*, No. 17-cv-00967, 2017 WL 6398339, at *4 (S.D.N.Y. Nov. 21, 2017).

"It is well-settled that one or two isolated racial remarks are insufficient to establish a hostile work environment." *Winkfield v. City of New York*, No. 97-cv-02183, 1999 WL 1191544, at *3 (S.D.N.Y. Dec. 15, 1999). Specifically, the Second Circuit has held that a single, mild racialized statement is insufficient to sustain a race-based hostile environment claim, even when combined with evidence of other, more severe harassment. *See Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 440 (2d Cir. 1999), *abrogated on other grounds*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). In *Richardson*, the plaintiff, a Black woman, presented evidence of a litany of targeted and harassing behavior by her coworkers. *Id.* at 435. She was called "stupid" and "ignorant" at least fifteen to twenty times; she found horse manure in her parking spot; her supervisor divulged her address to an inmate; and a coworker struck

her with a rubber band. *Id.* She also alleged a single statement related to her racial category: one coworker had commented that "all Black inmates look alike." *Id.* The Second Circuit held that that that single, "isolated, mild" statement could not "under any objective standard, suffice to create a hostile working environment." *Id.* at 440. Accordingly, it affirmed the grant of summary judgment on the plaintiff's related hostile environment claim. *Id.* at 450.

Here it is undisputed that neither Berti nor Giuffre used explicit racialized language towards plaintiff. Rule 56.1 Resp. ¶¶ 100–01. Instead, plaintiff argues that he experienced severe and pervasive harassment because Giuffre ignored or was short with him, denied him professional opportunities, which were instead given to less experienced white and Hispanic employees, and denied him a partner for tasks that required two people. Opp'n 24. He urges that the Juneteenth incident indicates that all of those incidents were attributable to racial discrimination. Opp'n 24.

However, under *Richardson*, Giuffre's statement that he "had a comment about [Juneteenth]" but would keep it to himself cannot bear that weight. More so than the statement in *Richardson*, that statement is mild. Even though it suggests some unspoken disagreement with a holiday celebrating the freedom of Black people from slavery, it does not disparage Black people or rest on a historically racist stereotype. Additionally, there is no indication in the record that Giuffre repeated his statement. The record reflects only that after he spoke with plaintiff, workers were told that they were not permitted to leave early for the holiday. Rule 56.1 Resp. ¶¶ 44–45. Accordingly, Giuffre's "isolated, mild" Juneteenth statement "cannot . . . suffice to create a hostile working environment" here. *Richardson*, 180 F.3d at 440.

Accordingly, the Court grants summary judgment with respect to plaintiff's Section 1981 hostile work environment claim.

### III. Retaliation under Section 1981

"Although the statute is silent on the issue, 42 U.S.C. § 1981 encompasses claims of retaliation" as well as discrimination claims. *See Ottley-Cousin*, 2019 WL 1994488, at *12. Like discrimination claims, Section 1981 retaliation claims are "analyzed pursuant to Title VII principles and the *McDonnell Douglas* burden-shifting evidentiary framework." *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015). Under that framework, the plaintiff must first establish "a prima facie case of retaliation." *Russell v. N.Y.U.*, 739 F. App'x 28, 32 (2d Cir. 2018) (summary order). To make out a prima facie case of retaliation under Section 1981, a plaintiff must present evidence showing that (1) plaintiff participated in a protected activity; (2) the defendant knew about the protected activity; (3) plaintiff experienced an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Ottley-Cousin*, 2019 WL 1994488, at *12.

Defendant argues that plaintiff's retaliation claims fail because the record does not indicate that plaintiff ever made clear to defendant that his complaints were about race-based discrimination specifically. Mot. 22. Accordingly, defendant argues, plaintiff has failed to make out a prima facie case of retaliation. The Court agrees.

"Filing either a formal or informal complaint challenging discrimination is a protected activity for purposes of retaliation claims[.]" *Id.* at *13. However, a generalized complaint alone is not sufficient to sustain a retaliation claim. *See id.* ("[A]n undisclosed belief of [discriminatory] treatment will not convert an ordinary employment complaint into a protected activity."). For a plaintiff to demonstrate that his employer knew about

his protected activity, he must have made reasonably clear in his complaint that his protest was *aimed at conduct prohibited by the relevant law*. *See Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) (affirming dismissal of Title VII retaliation claim where "[the plaintiff]'s complaints . . . did not state that [she] viewed [her supervisor's] actions as based on her gender, and there was nothing in her protests that could reasonably have led [the defendant] to understand that that was the nature of her objections."). In other words, plaintiff's "[c]omplaints cannot be so vague . . . that the employer could not 'reasonably have understood'" them to be directed at conduct prohibited by one or more of the relevant anti-discrimination laws. *Ottley-Cousin*, 2019 WL 1994488, at *13 (quoting *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011)). "Mere complaints of unfair treatment" are not sufficient in the employment retaliation context: instead, the "onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally." *Benzinger v. Lukoil Pan Americas, LLC*, 447 F. Supp. 3d 99, 124 (S.D.N.Y. 2020).

Here, plaintiff testified that he complained to Berti about Giuffre multiple times. Ellis Dep. 73–74. However, he did not testify that he ever reasonably connected his complaints to race discrimination. When asked "what specifically" he would complain about to Berti, plaintiff responded that he would complain that Giuffre was "not giving [him] the amount of work to run" and that "the way [Giuffre] interacted with [others]" was different than how he interacted with plaintiff. Ellis Dep. 73–74. He recalled using the term "harassment" in those complaints. Ellis Dep. 75. But when asked whether he ever used the term "discrimination," Ellis responded, "I would have to think long and hard about this. I'm not sure. I don't know." Ellis Dep. 74–75.

Berti, in contrast, was unequivocal: he had not understood Ellis to be complaining about discrimination in his grievances about Giuffre. Berti Dep. 43–44. Indeed, when Berti was asked whether he had asked plaintiff if the actions were based on race, Berti responded, "I did not. . . . I would imagine he would have said so in the complaint"—indicating that plaintiff had not in fact said so in his criticisms of Giuffre. Berti Dep. 43. Berti also testified affirmatively that plaintiff had never complained to him about being discriminated against based on his race. Berti Dep. 40. In contrast, plaintiff never testified affirmatively that he referred to race when making his complaints to Berti. Ellis Dep. 74–75. Thus, even though plaintiff identifies as "disputed" the statement that "Ellis did not specify to Berti that his complaint about Giuffre was about race," *see* Rule 56.1 Counterstatement ¶ 73, he has not identified evidence in the record that counters Berti's testimony, *see Foote v. Bd. of Educ. of Whitehall Cent. Sch. Dist.*, No. 22-cv-00815, 2024 WL 3376651, at *2 (N.D.N.Y. July 11, 2024) ("Denying a fact solely based on a lack of knowledge as opposed to contrary evidence is insufficient to raise any genuine dispute of material fact.").

Given that record, plaintiff's complaints are analogous to the ones the court found insufficient in *Benzinger*, 447 F. Supp. 3d at 126. There, the plaintiff had complained about "[her] compensation and general treatment" and had stated to superiors that she believed it was unfair that another employee, who happened to be Russian, was paid more than her. *Id.* But the record reflected that she did not raise the issue of discrimination in those complaints: in fact, in an email recapping a key meeting, she "did not mention discrimination, favoritism, or the treatment of employees of Russian descent relative to others" at all. *Id.* The court concluded that "[o]n this record, no reasonable juror could conclude that [plaintiff's superiors] should have understood [her] complaints of unfair

treatment (to wit, what [plaintiff] believed to be the higher pay of the other executive assistant) to relate to her [protected characteristic].” *Id.*

So too here. Plaintiff complained about not being able to run his own jobs, about missing equipment, about Giuffre not interacting with him, and about not being allowed to take off for Juneteenth, among other grievances. Rule 56.1 Counterstatement ¶¶ 33–38, 46; Ellis Dep. 39, 43, 74, 117. Only the last is arguably related to race on its face, and, even there, plaintiff testified that no one, regardless of race, was permitted to take off or leave early for the day, which was not an official holiday on the union calendar. Ellis Dep. 116–18. Though plaintiff testified that he understood his complaints to be related to discrimination based on his race, there is no indication in the record that others, including Berti, had the same understanding. *See, e.g.*, Berti Dep. 43. Thus, like the plaintiff in *Benzinger*, plaintiff here has failed provide evidence that he engaged in a protected activity known to his employer and accordingly has failed to make out a prima facie case of retaliation. 447 F. Supp. 3d at 126; *see also Cobb v. Ellab Inc.*, No. 22-cv-01002, 2024 WL 1963430, at *9 (N.D.N.Y. May 2, 2024) (plaintiff's complaint of feeling isolated and ostracized without mentioning race as the cause was insufficient, but complaint that referred to race discrimination explicitly was sufficient).

Further, even if the Court were to find that plaintiff's Juneteenth complaint, specifically, put Berti on notice that plaintiff was complaining about race-based discrimination, the Court would still find that plaintiff has failed to demonstrate a causal connection between that protected activity and any adverse employment action. *Ottley-Cousin*, 2019 WL 1994488, at *12. As explained above, courts in this Circuit have applied a presumption against retaliation when a positive employment action occurs after a protected activity and before an adverse employment action. *See Williams*, 2021 WL

1178118, at *10 (causal link broken where plaintiff was promoted after protected activity); *Byrne*, 2007 WL 962929, at *12 (same, collecting cases).

Here, the record reflects that plaintiff raised his concerns about Juneteenth in June 2021. *See* Ellis Dep. 116–17. Between that event and his firing in November 2021, plaintiff was involved in an "exchange[ of] words" with Chavis, Rule 56.1 Resp. ¶ 49; he was fired for cause in connection with that incident, Rule 56.1 Resp. ¶ 51; and he was rehired, Rule 56.1 Resp. ¶ 52. Berti's decision to rehire plaintiff following a termination for cause was a "positive employment action" that fell between plaintiff's Juneteenth complaints and his ultimate termination in November 2021. Thus, as defendant argues, that rehiring decision "break[s] any inference of retaliatory causation" with respect to the Juneteenth complaint here. Reply 10.

Accordingly, the Court grants summary judgment with respect to plaintiff's Section 1981 retaliation claim as well.

## IV. State Law Claims

Under 28 U.S.C. § 1367(c)(3), a district court may "decline to exercise supplemental jurisdiction" when it "has dismissed all claims over which it has original jurisdiction." "[T]raditional values of judicial economy, convenience, fairness, and comity" weigh in favor of declining to exercise supplemental jurisdiction where all federal-law claims are eliminated before trial. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006). However, "a [c]ourt may exercise its discretion to retain supplemental jurisdiction over a state law claim where the parties have already completed discovery, and where the state law claim will not require resolution of any difficult questions of state law." *Stridiron v. Newburgh Enlarged City Sch. Dist.*, No. 20-cv-06823, 2023 WL 5586680, at *14 (S.D.N.Y. Aug. 29, 2023) (quoting *Finkelstein v.*

*Mardkha*, 495 F. Supp. 2d 329, 345 (S.D.N.Y. 2007)); *see also Diaz v. Viargan*, No. 16-cv-09106, 2018 WL 4360790, at *13 (S.D.N.Y. Aug. 29, 2018) (exercising supplemental jurisdiction where the parties had completed discovery, the state law claims "involve[d] settled, routine principles of law," and "[d]ismissing the claims would require the parties to duplicate . . . their work before another court and would squander the Court's work on the case, as well as put the matter at the back of a very long queue of cases awaiting trial in the New York State Supreme Court."); *Motta v. First Unum Life Ins. Co.*, No. 09-cv-03674, 2011 WL 765838, at *1 (E.D.N.Y. Feb. 24, 2011) ("When discovery is complete, a case is ready for trial, and the state law claims involve only settled principles not novel legal questions, it is proper for a district court to retain jurisdiction.").

In this case, discovery has been completed; however, the Court finds that the need to interpret and apply the relatively newly amended NYSHRL counsels against exercising supplemental jurisdiction here. As one of this Court's sister courts has recently observed, "[c]ourts have yet to resolve whether the NYSHRL's standards are coextensive with the NYCHRL, or whether the NYSHRL's standards are a middle-ground between federal and city laws" even though "[r]ecent decisions by the Second Circuit and New York courts have implied that the standards for employment-discrimination claims under the two statutes are now largely the same." *See Anderson v. Amazon.com, Inc.*, No. 23-cv-08347, 2025 WL 2780921, at *12 (S.D.N.Y. Sept. 30, 2025). Thus, it is not clear that the state law claims in this case will involve only settled, routine principles of law. Both the Supreme Court and the Second Circuit have counseled that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties," especially where legal issues remain unresolved. *Gilmore v. Gilmore*, 503 F. App'x 97, 100 (2d Cir. 2012) (summary order) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715,

726 (1966)). Accordingly, this Court declines to exercise supplemental jurisdiction, even though discovery has already been completed in this case. *See id.* (finding "no abuse of discretion in the district court's decision to decline supplemental jurisdiction over the state law claims, even though discovery had been completed").

Thus, having dismissed plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over his remaining state law claims.

**CONCLUSION**

For the reasons stated above, summary judgment is **GRANTED** as to plaintiff's Section 1981 claims. Because the Court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims, those claims are accordingly **DISMISSED** without prejudice. The Clerk of Court is respectfully ordered to issue judgment and close the case.

**SO ORDERED.**

*/s/ Natasha C. Merle*
NATASHA C. MERLE
United States District Judge

Dated: September 15, 2026
Brooklyn, New York